# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **ALFREDO SANTIAGO MORENO,** <br> Movant, | **CRIMINAL NO.** <br> **1:06-CR-461-CC-GGB** |
| v. | **CIVIL ACTION NO.** <br> **1:10-CV-0164-CC-GGB** |
| **UNITED STATES OF AMERICA,** <br> Respondent. | **MOTION TO VACATE** <br> **28 U.S.C. § 2255** |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Alfredo Santiago Moreno ("Movant") has filed a motion to vacate sentence under 28 U.S.C. § 2255. [Doc. 82]. Movant challenges the constitutionality of his life sentence that was imposed on January 3, 2008, following the trial and entry of a guilty verdict on April 13, 2007. [Docs. 49, 62]. Presently before me for consideration are: (1) Movant's § 2255 motion to vacate [Doc. 82]; (2) the United States of America's (hereinafter "Government") response to the motion to vacate [Doc. 87][1]; and (3) Movant's reply to the Government's response [Doc. 88].

---

[1] The Government also filed a motion for extension of time to respond to Movant's motion [Doc. 85], which is hereby **GRANTED** *nunc pro tunc*.

## I. BACKGROUND

### A. Procedural History

On November 8, 2006, a grand jury in this district returned a four-count indictment charging Movant with the following: one count of conspiring to possess with the intent to distribute and to manufacture methamphetamine, in violation of 21 U.S.C. § 846 (Count One); one count of manufacturing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) (Count Two); one count of possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) (Count Three); and one count of maintaining a residence for the purpose of manufacturing methamphetamine, in violation of 21 U.S.C. § 856(a)(1) (Count Four). [Doc. 3].

A jury trial was conducted on April 9-13, 2007, and the jury returned a verdict of guilty on all four counts. [Docs. 44-49].

Movant's Presentence Report ("PSR") was prepared using the 2006 United States Sentencing Guidelines. The (PSR) calculated Movant's base offense level at 38, based on an amount in excess of 3.88 kilograms of methamphetamine ("ice"). (PSR ¶ 48). With a three-level enhancement pursuant to § 2D1.1(b)(8)(B) for posing a threat to others and the environment (PSR ¶ 49), and a four-level enhancement for role in the offense

2

pursuant to § 3B1.1 (PSR ¶ 51), Movant had an adjusted total offense level of 45. (PSR ¶ 53). The final PSR calculated zero criminal history points and recommended a custody range of life imprisonment. (PSR p. 11, 14).

Movant's sentencing hearing took place on January 3, 2008. [Doc. 74]. Movant made two objections to the Sentencing Guidelines calculations contained in his PSR: (1) an objection to an enhancement pursuant to § 2D1.1(b)(8)(B) for endangering the safety of others through the manufacturing of methamphetamine; and (2) an objection to an enhancement to his base offense level for his role in the offense, pursuant to § 3B1.1. [Doc. 74 at 3-18]. During the sentencing hearing, the district court rejected Movant's arguments on these two objections. The district judge found that a preponderance of the evidence supported the two enhancements. [Doc. 74-5; Doc. 74-18]. The district court sentenced Movant to life imprisonment on Counts One, Two, and Three, and 20 years of imprisonment on Count Four, all to be served concurrently. [Doc. 62].

At the end of the hearing, Movant made a general objection to the sentence, but did not specifically object to the two enhancements discussed above.

Movant filed a notice of appeal. On November 4, 2008, the United States Court of Appeals for the Eleventh Circuit affirmed Movant's conviction and sentence. [Doc. 81]; *United States v. Moreno*, 322 F. App'x 637 (11th Cir. 2008).

3

On January 19, 2010, Movant, through counsel, filed the instant § 2255 motion, raising the following two grounds for relief:[2]

1. counsel was ineffective for failing to properly object to the use of the enhancement for role in the offense under United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1; and

2. counsel was ineffective for failing to properly object to the enhancement under the federal sentencing guidelines at U.S.S.G. § 2D1.1(b)(10)(C)(ii) for the creation of a substantial risk of harm to human life or the environment by a methamphetamine manufacturing operation.

[Doc. 82-2 at 5].

B. Factual Background

The criminal conduct in this case began in late 2004, when Movant and several co-conspirators started making plans to establish a large methamphetamine lab in Atlanta, Georgia. [Doc. 72 at 429-30, 539-49]. Movant was living in Hampton, Georgia, in a rented mobile home. [*Id.* at 404-8, 440-41]. Movant's partner, Ramon Oseguera Alanis ("Oseguera"), was in Mexico manufacturing methamphetamine in a laboratory there. [*Id.* at 429-30]. In September 2004, Movant rented a single family residence located at 200 Church Road, Smyrna, Georgia, and began making preparations

---

[2]In his motion, Movant raised a third claim of ineffective assistance of counsel. However, he withdrew that claim in his reply to the Government's response. [Doc. 88].

4

to set up the laboratory in the house. [*Id.* at 539-49]. Unbeknownst to Movant, the owner of the residence, Myra Quintero, became suspicious and contacted DEA. [*Id.* at 543].

Meanwhile, at the lab in Mexico, Oseguera recruited a fellow lab worker, Gustavo Lara Murillo ("Lara"), to travel to Atlanta and work in the lab there. [Doc. 72 at 429-30]. Oseguera told Lara that he and Movant were "partners" in the lab operation, and that Movant was financing the laboratory because Oseguera had no money. [*Id.* at 430]. Lara agreed to travel to Atlanta. [*Id.*].

In mid-January 2005, Lara crossed the Mexican border into Texas using a "coyote" paid by Oseguera. [*Id.* at 431-32]. In late January, 2005, Lara traveled in a van to Atlanta, and during the trip the driver spoke to Movant by phone regarding the location of a gas station where Movant would pick up Lara. [*Id.* at 434-35]. When they arrived at the gas station, Movant paid the driver $450 for transporting Lara to Atlanta. [*Id.* at 436]. Movant bought clothes for Lara and took him to the Church Road residence, where he showed Lara the laboratory in the basement. [*Id.* at 436-37]. According to Lara, the laboratory appeared to be fully operational and already had been used to manufacture methamphetamine. [*Id.* at 438]. Movant then took Lara to his mobile home, where Lara stayed while he remained in Atlanta. [Doc. 72 at 439-40, 469-

5

70]. During this period, Movant and Oseguera paid all of Lara's living expenses. [*Id.* at 444]. In addition, Lara also saw Movant counting large sums of cash at his residence. [*Id.* at 445-47].

Within several days after Lara's arrival, Movant, Lara, Oseguera, and Movant's brother-in-law, Ignacio Cortes Valencia ("Cortes"), traveled to various hardware stores in the area of the Church Road residence to purchase supplies for the lab. [*Id.* at 441-44]. The magnitude of the conspirators' purchases tipped off the store employees, and they reported the purchases to the police. [Doc. 70 at 172].

Lara, Oseguera, and Cortes manufactured methamphetamine at the Church Road lab on two occasions in the first week of February 2005. [Doc. 72 at 447-49]. Movant did not participate in the manufacturing process, but he visited the lab frequently and picked up the finished product. [*Id.* at 449-50, 464-65].

Due to the close proximity of the homes in the residential neighborhood where the lab was located, the neighbors grew suspicious of the activities there. [Doc. 70 at 172]. Although they noticed several people coming and going from the house all day and night, it appeared to the neighbors that no one lived there. [*Id.*; Doc. 71 at 335-36; Doc. 73 at 617-18]. One neighbor, Gary Zinn, testified that he noticed several Hispanic men standing outside the house and inspecting what neighbors would be able to see through

6

the windows of the house. [Doc. 73 at 620-21]. Zinn noticed in particular one man with gold-colored hair doing this on several occasions. [*Id.* at 620-21; 627-28]. The man with gold-colored hair was not identified. There is no evidence in the record that Movant or his co-defendants do not (or did not at the time of their criminal activity) have gold-colored hair.

Zinn and other neighbors also reported that they smelled strong acidic, acetone-like odors coming from the house. [Doc. 70 at 173; Doc. 71 at 335; Doc. 73 at 617]. Zinn testified that, on two occasions, he saw liquid that smelled to him like bleach flowing out of the garage door of the house and into the back yard. [Doc. 73 at 621-22].

On February 9, 2005, Lara, Oseguera, and Cortes went to the Church Road residence to clean up the lab. [Doc. 72 at 465-66]. They then joined Movant to visit a car lot, because Movant wanted to buy a truck to haul away trash from the lab. [*Id.*]. Late in the afternoon, Lara, Oseguera, and Cortes returned to the lab to continue cleaning and to pick up a pound of ice methamphetamine to take to Movant. [*Id.* at 466-67].

That same day, DEA Agents raided the lab. At approximately 10:40 p.m., DEA Special Agent Chris Daniel saw Oseguera exit the basement door carrying a large trash can that was filled with liquid. [Doc. 70 at 176]. Oseguera walked into the back yard and dumped the liquid onto the ground. [*Id.* at 176-77]. Soon thereafter, DEA agents

7

arrested Oseguera, Lara, and Cortes as they tried to leave the residence. [*Id.* at 178-79]. The agents seized a pound of ice methamphetamine from underneath the front passenger seat of their vehicle. [*Id.* at 181-82].

The agents called in a specialized laboratory search team to execute a search warrant at the residence. [Doc. 70 at 184]. The agents discovered a "massive" methamphetamine lab in the basement, complete with modified propane tanks, heating mantles, a mechanical press, and 55-gallon containers filled with liquid byproduct. [Doc. 71 at 242-49]. According to the agents who searched the lab, it was capable of producing more than 10 pounds of methamphetamine in a 24-hour period, and therefore fit within a category designated by the DEA as a "Superlab." [*Id.* at 242].

Items seized during the arrest of Oseguera, Lara, and Cortes led to Movant's mobile home, and agents began piecing together evidence of Movant's involvement. [Doc. 71 at 340-41]. On November 3, 2006, agents found Movant and arrested him. [*Id.* at 359-60].

Movant's trial commenced on April 9, 2007. DEA Special Agent Jay Mortenson, who was qualified as an expert by the Court [Doc. 43], testified to the following: Based upon the equipment and ingredients, the lab used the red phosphorus method of manufacturing methamphetamine [Doc. 71 at 243]; the red phosphorus method is

8

extremely volatile and creates a significant explosion risk, and also generates poisonous gases and dangerous byproducts [*Id.* at 237-38]; using the red phosphorus method efficiently, the pure pseudoephedrine powder found in the lab's basement would yield approximately 30 pounds of methamphetamine [*Id.* at 258-59]; and the liquids filling the numerous containers in the basement contained the toxic byproducts of the manufacturing process and created hazards to both the neighbors of the lab and the agents who conducted the search [*Id.* at 247, 281-86; 290-91].

Agent Mortenson also described the size and capacity of the lab, indicating, "This was a massive lab. This was the biggest lab that I had worked on. This was the biggest lab we've had in Georgia or on the East Coast. This is the largest methamphetamine lab east of the Mississippi." [Doc. 71 at 242].

In his reply brief, Movant points to the following evidence that could support the conclusion that the defendants took some steps to contain the lab and protect the public: Lara, Oseguera, and Cortes were seen cleaning up the lab [Doc. 72 at 465-466]; trash bags were found containing empty bottles [Doc. 71 at 245-249, 259-260]; plastic containers held pseudoephedrine powder [*Id.* at 254, 258]; there were 33 gallon buckets of kitty litter [*Id.* at 245, 249, 259-260]; acetone found at the scene was contained along with tolene and denatured alcohol [*Id.* at 246, 259-262]; and five gallon drums were used

9

to store by-product of the manufacturing process. [*Id.* at 247, 281-86, 290, 291]. After deliberating for one day, the jury returned a verdict of guilty. [Doc. 73 at 750-51].

## II. **DISCUSSION**

Movant raises two claims of ineffective assistance of counsel. The Supreme Court precedent applicable to ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668, 698 (1984). To make a successful claim of ineffective assistance of counsel, a petitioner must show that: (1) his counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 697. A petitioner must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The court must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To make such a showing, a petitioner must demonstrate that "no competent counsel would have taken the action that his counsel did take." *United States v. Freixas*, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (quotation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as

10

defense counsel acted at trial." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992).

In order to meet the second prong of the test, the petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. That is, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### A. Ground One

In Ground One, Movant contends that his trial counsel was ineffective for failing to properly object to the use of the enhancement for role in the offense under U.S.S.G. § 3B1.1. Specifically, Movant argues that his attorney failed to properly object to the district court's finding that there were five or more people in the criminal activity, and his failure to properly object resulted in the higher, plain error standard of review on appeal.

U.S.S.G. §3B1.1(a) authorizes a four-level enhancement in a defendant's offense level, "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Movant's PSR recommended a four-level enhancement for role in the offense under § 3B1.1. At the sentencing

11

hearing, Movant's counsel objected to the enhancement. [Doc. 74 at 2]. The Government argued both prongs of § 3B1.1's four-level enhancement, arguing both that Movant supervised five or more people and that the criminal conspiracy was "otherwise extensive." [*Id.* at 11-16]. The Government pointed out that Lara's testimony indicated that Movant was Oseguera's partner and orchestrated the conspiracy. [*Id.* at 12-13]. The Government also argued that Movant not only invested money in the venture, but also financed it, was the "owner" of the operations, rented the house, set up the lab, recruited workers, and took all the finished product to distribute it. [*Id.*]. The Government then listed the number of people involved in the conspiracy, including Movant, Oseguera, Lara, Cortes, the gold-haired individual seen at the lab by neighbor, Gary Zinn, and the two people who helped Lara cross the border and travel to Atlanta to work in the lab. [Doc. 74 at 15-16].

The Court ruled that the enhancement applied on both prongs. The Court first found that "the Defendant was in fact the leader of this conspiracy, was the person who hired and directed the activities of others in this criminal enterprise and it did include at least five or more individuals." [Doc. 74 at 18]. The Court alternatively found that the criminal conduct was otherwise extensive "in that this was probably the largest lab

12

. . . east of the Mississippi . . . and it produced large quantities of methamphetamine and this was done over a period of time." [*Id.*].

Movant challenged the Court's findings on both prongs in his appeal to the Eleventh Circuit. Although the Eleventh Circuit did not discuss the Court's ruling on the "otherwise extensive" prong, the appeals court found that Movant had failed to present a specific objection to the district court's findings as to the presence of five or more people, and thus reviewed the issue for plain error. *Moreno*, 322 F. App'x at 639.[3] The Eleventh Circuit reviewed the factual record and determined that "the record supports the district court's finding by a preponderance of the evidence that the criminal activity involved five or more participants." *Id.* at 639-40.

Movant's claim that his attorney failed to properly object to the district court's finding that there were five or more participants involved in the criminal activity is without merit because the Court of Appeals ruled that no error was committed, even under the standard of review for properly preserved objections. The Court of Appeals stated that the district court "did not commit error, much less plain error, by finding the

---

[3]If the district court elicits objections after imposing sentence, and the defendant fails to clearly articulate grounds for his objections, the objections are waived and entertained on appeal under the plain error standard. *See, e.g., United States v. Maurice,* 69 F.3d 1553, 1557 (11th Cir. 1995).

13

conspiracy involved at least five participants." *Moreno*, 322 F. App'x at 639. The Court of Appeals went on to state that "Because the record supports the district court's finding by a preponderance of the evidence that the criminal activity involved five or more participants, the district court did not plainly err by imposing [the enhancement]." *Id.* at 639-40. Thus, the Court of Appeals made clear that the district court's decision would have been affirmed even under the clear error standard of review.[4] Therefore, Movant has failed to show that he was prejudiced by his counsel's failure to make a specific objection.

Movant's argument that the evidence was insufficient to support the finding that there was a fifth participant in the criminal activity is to no avail because he cannot re-litigate in his § 2255 petition matters that were decided against him in his direct appeal. *E.g., United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Thomas v. United States*, 572 F.3d 1300, 1304 (11th Cir. 2009). Also, I reject Movant's argument that if his counsel had properly objected, "the Eleventh Circuit would have been forced to take a closer look to see if the Government had established this number of participants

---

[4] A district judge's factfinding related to applications of the Sentencing Guidelines is reviewed for clear error. *United States v. Mesa*, 247 F.3d 1165, 1168 (11th Cir. 2001). Once the court has completed its factfinding, the application of the facts to the Guidelines is a question of law reviewed de novo. *United States v. Washington*, 434 F.3d 1265, 1267 (11th Cir. 2006).

by the preponderance of the evidence." [Doc. 88 at 7]. The key fact is that the Eleventh Circuit explicitly affirmed the district court's finding that a preponderance of the evidence showed that the criminal activity involved five or more participants. This Court has no basis or authority to disregard this finding or to assume that it was based on an insufficient review of the record.

B. <u>Ground Two</u>

In Ground Two, Movant argues that his counsel was ineffective for failing to properly object to the application of the enhancement for endangering human life under § 2D1.1(b)(8)(B). Movant contends that his counsel's failure to properly object to this enhancement at sentencing resulted in a higher, plain error standard of review on appeal.

In his appeal to the Eleventh Circuit, Movant argued that the district court erred by failing to address on the record all four factors set out in Application Note 20[5] to

---

[5]Application Note 20 to this guideline states: [i]n determining, for purposes of subsection (b)(13)(C)(ii) or (D), whether the offense created a substantial risk of harm to human life or the environment, the court shall include consideration of the following factors: (i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored; (ii) The manner in which hazardous or toxic substances were disposed, and the
likelihood of release into the environment of hazardous or toxic substances; (iii) The duration of the offense, and the extent of the manufacturing operation; (iv) The location of the laboratory (e.g., whether the laboratory is located in a residential

15

§ 2D1.1(b)(8)(B).[6] The Eleventh Circuit held that, because Movant never objected to the district court's failure to discuss each factor on the record, the court would review the claim under a plain error standard. The Eleventh Circuit went on to say that because Application Note 20 does not provide that the district court must consider on the record all four listed factors, and neither the Eleventh Circuit nor the Supreme Court has held a district court is obligated to do so, the district court's failure to do so was not plain error. Significantly, the Eleventh Circuit also held that the record supported the imposition of the three-level enhancement under § 2D1.1(b)(8)(B).

Movant cannot establish prejudice for counsel's alleged failure to properly object to the enhancement. The preponderance of the evidence, as set forth above and as discussed in the Government's brief on direct appeal [Doc. 87-2 at 53-4], clearly supported the enhancement after taking into consideration all four factors in the Application Note. More importantly, the Eleventh Circuit explicitly held that the record supported the imposition of the three-level enhancement under § 2D1.1(b)(8)(B). *Moreno*, 322 F. App'x at 640. Therefore, even if counsel had

---

neighborhood or a remote area) and the number of human lives placed at substantial risk of harm.

[6]The citation for this application note changed to § 2D1.1(b)(13)(C)(ii) under the 2007 Guidelines and is the current citation.

properly objected to the enhancement, the result would not have been different. Accordingly, Movant's ineffective assistance of counsel claim in Ground Two fails.

## III. CERTIFICATE OF APPEALABILITY

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Movant has failed to make a substantial showing of the denial of a constitutional right. Movant has failed to establish that he was denied effective assistance of counsel. Accordingly, **I RECOMMEND** that a certificate of appealability be **DENIED**.

## IV. CONCLUSION

Based on the foregoing, **I RECOMMEND** that Movant Alfredo Santiago Moreno's motion to vacate sentence [Doc. 82] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to me.

**IT IS SO ORDERED AND RECOMMENDED**, this 13th day of March, 2012.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

18